IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRUCE K. SIDDLE and SANDRA K. SIDDLE, Individually and as Trustees of the BRUCE K. SIDDLE and SANDRA K. SIDDLE TRUSTS, dated July 16, 2003, and PPCT MANAGEMENT SYSTEMS, INC., | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CIVIL NO. 09-376-GPM ) |
| CONNECTGOV, INC., *et al.*, | ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter is before the Court on several motions, including a Joint Motion to Dismiss filed by Defendants Steven Logan (Logan), Satellite Tracking of People, LLC (TN) (STOP-TN), and Satellite Tracking of People, LLC (DE) (STOP-DE). There also is Plaintiffs' Motion to Strike the Affidavits of Joseph F. Johnson, Jr.; Steven W. Logan; and Doctor R. Crants, Jr. The Joint Motion to Dismiss for lack of personal jurisdiction will be granted, and the motion to strike the affidavits will be denied.

### FACTUAL BACKGROUND

Plaintiffs are citizens of the state of Illinois who own PPCT Management Services, Inc. (PPCT, an Illinois corporate citizen). They also own Homeland Security Corporation (HSC) and Homeland Training Corporation and are trustees of the Bruce K. Siddle and Sandra K. Siddle Trusts (Illinois Trusts). They claim that Defendants conspired to defraud them of property held by HSC

through alleged Racketeer Influenced and Corrupt Organizations Act (RICO)-based activities. Specifically, Plaintiffs claim that (1) Defendants STOP-TN and STOP-DE were "RICO enterprises that affected interstate commerce within the meaning of 18 U.S.C. § 1961(4)" (Doc. 2, ¶¶ 17, 24) and (2) Defendant Logan participated in the control and affairs of STOP[1] "through a pattern of racketeering activity" (Doc. 2, ¶¶ 31-32).

Plaintiffs want compensatory, punitive, and treble damages exceeding $81,925,260, plus costs, for damages caused by Defendants' alleged racketeering activity and illegal conspiracy. Logan and STOP jointly move to dismiss on three grounds: (1) lack of personal jurisdiction, (2) lack of standing, and (3) failure to state a claim upon which relief may be granted. The Court lacks personal jurisdiction over Defendants Logan and STOP, although the other arguments support dismissal.

## ANALYSIS

An action against a party over whom the Court lacks personal jurisdiction must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). "The plaintiff bears the burden of demonstrating personal jurisdiction." *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). Where, as here, a motion to dismiss is submitted on written materials without an evidentiary hearing, the plaintiffs need only establish a prima facie case for personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338

---

[1] In accord with *Deicher v. City of Evansville, Wis.*, 545 F.3d 537, 541 (7th Cir. 2008), citing *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008), the Court takes judicial notice of Documents 94-2 and 94-3, two printouts from the Tennessee Secretary of State's website, available at http://www.state.tn.us/sos/, last visited on November 10, 2009, affirmatively demonstrating that STOP-TN was merged into STOP-DE as of December 17, 2004. As such, these parties will be referred to hereinafter as STOP.

F.3d 773, 782 (7th Cir. 2003).  Further, any conflicts between well-pleaded jurisdictional allegations and affidavits will be resolved in the plaintiffs' favor. *Id.* at 782-83.  A court, however, accepts as true any uncontroverted facts contained in any affidavits. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).  In order to exercise personal jurisdiction over Defendants Logan and STOP, this Court must find that:  (1) haling them into court in this district accords with due process principles and (2) they are amenable to process from the court.  *See United States v. De Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990).

The answer to the first proposition is resolved by determining whether these Defendants had sufficient "minimum contacts" with the forum so that the uber-familiar "traditional notions of fair play and substantial justice" are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  In a federal question case such as this one, "due process requires only that each party have sufficient contacts with the United States as a whole rather than any particular state or geographic area." *De Ortiz*, 910 F.2d 376 at 382.  More specifically, "a federal court in a federal question case is not implementing any state's policy; it exercises the power of the United States." *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671-72 (7th Cir. 1987).  The relevant inquiry, therefore, is whether Defendants Logan and STOP had sufficient contacts with the United States – a question that here, and most always, must be answered in the affirmative because of the defendants' ongoing business activities within the United States.

In a federal question case, determining whether the defendants are amenable to service requires inquiry into the applicable federal statute. *De Ortiz*, 910 F.2d 376 at 382.  Here, Plaintiffs bring their claims under RICO, 18 U.S.C. §§ 1962(a)-(d), and common law civil conspiracy.  As such, this Court must first consider the implications of RICO § 1965(a) and (b), which authorize

venue and service of process respectively.

Section 1965(a) deals with venue in RICO cases; section § 1965(b) creates personal jurisdiction by authorizing service of process, which is how a court gains jurisdiction over the person. *Lisak,* 834 F.2d 668 at 671-72, *citing Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538-39 (9th Cir. 1986). Section 1965(b) authorizes nationwide service of process in civil RICO cases where required by the ends of justice. While not specifically defining "the ends of justice," the Seventh Circuit Court of Appeals in *Lisak* examined § 1965(b) and cited to the Ninth Circuit's decision in *Butcher's Local*. In that case, the Ninth Circuit Court of Appeals held that "for nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multi[-]district conspiracy and the *plaintiff* must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Local*, 788 F.2d at 539 (emphasis added). Section 1965(b) authorizes nationwide service "so that at least one court will have jurisdiction over everyone connected with any RICO enterprise." *Lisak*, 834 F.2d at 672. The Seventh Circuit Court of Appeals suggested an approach similar to that adopted by the Ninth Circuit by noting in *Lisak* that a district court in Indiana would have jurisdiction whether or not a non-resident defendant could be brought before the court in Illinois, "so perhaps the ends of justice do not 'require' his presence in [the] suit." *Id*.

Assuming, without deciding, that Plaintiffs have met their jurisdictional pleading burden as to at least one defendant, there is a district court that possesses personal jurisdiction over all the defendants. Specifically, this Court transferred to the United States District Court for the Middle District of Tennessee two related cases filed by Plaintiffs based upon an agreement containing a forum selection clause fixing exclusive jurisdiction and venue over "[a]ny action to enforce or

interpret [the] Agreement" in "the appropriate courts for Nashville, Davidson County, Tennessee." *See Siddle v. Crants*, civil no. 08-684-GPM (transferred Feb. 17, 2009) (*Siddle I*); *Siddle v. Homeland Security Corp.*, civil no. 08-878-GPM (transferred May 4, 2009) (*Siddle II*). As such, the Middle District of Tennessee currently is deciding many of the same issues involved in this action. The ends of justice do not require summoning Logan and STOP for proceedings in this district court.

Even if jurisdiction was proper under § 1965(b), venue in this Court would be improper under RICO § 1965(a). Generally, statutory venue provisions are meant "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-84 (1979). RICO § 1965(a) provides that a civil RICO action "may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Defendants Logan and STOP do not reside in this district nor do they have agents in this district.

Admittedly, there is a dearth of case law regarding what it means to be "found" or "transact affairs" for RICO venue purposes. However, other courts have held that in order to be "found" in a district, the defendant must be present by its officers and agents carrying on business of the corporation. *See, e.g., Van Schaick v. Church of Scientology of California, Inc.*, 535 F. Supp. 1125 (D. Mass. 1982). A defendant "transacts affairs" in a district where he regularly conducts business of a substantial and continuous nature. *See Miller Brewing Co. v. Landau*, 616 F. Supp 1285, 1288 (E.D. Wis. 1985). Here, Defendants Logan and STOP were not present, either individually or by their officers or agents. Moreover, they are conducting very limited business activities in Illinois via five small contracts with various law enforcement agencies – only one of which involves a county within this district (Perry) and which, according to affidavits, "accounts for less than one-

tenth of one percent of STOP's total revenues in 2008 and 2009" (Doc. 70, pp. 10-11). Clearly, this *de minimis* business activity does not rise to the level of being substantial within RICO's venue provision as interpreted by various other courts. *See, e.g., SoComm, Inc. v. Reynolds*, 607 F. Supp. 663 (N.D. Ill. 1985); *Dody v. Brown,* 659 F. Supp. 541 (W.D. Mo. 1987). Venue, therefore, is not proper in this district.

Neither Plaintiffs' alleged residence and financial injuries in Illinois, nor Logan or STOP's *de minimis* business connections with this district suffice to establish that venue is proper in this district under RICO § 1965(a). Furthermore, the "ends of justice" do not require haling Logan and STOP into this Court because personal jurisdiction is proper for all of the alleged RICO defendant-enterprises in another forum. At bottom, neither jurisdiction nor venue is appropriate in this district under RICO § 1965.

The only other potential basis for this Court to exercise personal jurisdiction therefore is the Illinois long-arm statute. Here, the constraints of personal jurisdiction are more clearly established. "A federal court borrowing a state jurisdictional statute may acquire personal jurisdiction only to the extent that the state law authorizes service of process." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002). In Illinois, the exercise of personal jurisdiction must comport with the Illinois long arm statute, the Illinois State Constitution, and the United States Constitution. The Illinois long arm statute, however, has been read to allow personal jurisdiction to reach as far as the requirements of due process will permit. The Illinois Constitution's due process requirements have been read to be identical to the United States Constitution's requirements in almost all relevant respects. As such, the test for personal jurisdiction in Illinois is ultimately a question of federal due process. *Id*. "The Due Process Clause of the Fourteenth Amendment limits when a state may assert in personam jurisdiction over nonresident individuals and corporations." *RAR, Inc.*, 107 F.3d at

1277.

Whether a defendant has sufficient "minimum contacts" with the forum state serves as the cornerstone inquiry for due process personal jurisdiction analysis. The test for whether the exercise of personal jurisdiction over a particular defendant comports with federal due process considerations was best articulated by the Supreme Court in its seminal opinion in *International Shoe Co. v. Washington*:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

326 U.S. at 316 (internal quotations omitted). What this standard means in a particular case, however, depends on whether "general" or "specific" jurisdiction is being asserted by the plaintiff.[2] *RAR, Inc.*, 107 F.3d at 1277. "[G]eneral jurisdiction is proper only when the defendant has continuous and systematic contacts with the forum." *Hyatt*, 302 F.3d at 713 (internal quotation omitted). By contrast, "specific jurisdiction" contemplates a claim that "is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984), *quoting Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

No allegations have been made by either party that Logan or STOP has the "continuous and

---

[2] Regardless of the type of jurisdiction being asserted, the fundamental fairness test involves several factors. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003), *citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). RICO was established as a tool to fight against organized crime and not necessarily business ventures gone bad. Illinois has no definable interest in adjudicating this dispute as the primary allegations concern businesses, individuals, and alleged acts almost entirely outside its boundaries. The most efficient resolution of this controversy is for the Middle District of Tennessee – which currently is handling *Siddle I and Siddle II* – to attempt to resolve this case contemporaneous with Plaintiffs' previously initiated litigation arising out of the same alleged business transactions.

systematic" contacts with Illinois necessary to warrant general jurisdiction in this state. *Hyatt*, 302 F.3d at 713. The question, therefore, is whether the allegations and affidavits warrant a determination that specific jurisdiction exists in this case. *See RAR, Inc.*, 107 F.3d 1272. Only the dealings between the parties in regard to the disputed claims are relevant to the minimum contacts analysis. *Hyatt*, 302 F.3d at 717.

Here, Defendant Logan, according to his affidavit, never entered into any contracts in the State of Illinois or with any Illinois residents (Doc. 70-3, ¶ 25). Further, Logan does not own any business or personal property in Illinois, and the last time Logan visited Illinois was approximately ten years ago (Doc. 70-3, ¶¶ 21, 23). Indeed, Defendant Logan apparently has no contacts with the State of Illinois. As such, it is impossible for Plaintiffs' claims against Logan to "arise out of" or be "related to" Logan's non-existent contacts with the State of Illinois.

Regarding Defendant STOP, while it has five small contracts with law enforcement agencies in Illinois, these contracts, according to affidavits, account for less than one percent of STOP's total revenues in 2008 and 2009 (Doc. 70-3, ¶¶ 26-31). This Court cannot comprehend how Plaintiffs' RICO and conspiracy claims, and their alleged financial injuries and lost business opportunities from HSC, a Tennessee corporation, can reasonably be held to "arise out of" or be "related to" STOP's *de minimis* business activities within Illinois.

Plaintiffs can't plausibly demonstrate that either Defendant has any meaningful or sufficient minimum contacts with this State. Their attempt to shoestring Defendants Logan and STOP into this district, therefore, clearly violates due process norms and offends "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.

Finally, Plaintiffs' Motion to Strike the Affidavits of Joseph F. Johnson, Jr.; Steven W. Logan; and Doctor R. Crants, Jr. (Doc. 93) is **denied**. While the parties dispute certain specific facts

within the affidavits, there is no dispute over *material* jurisdictional facts. As such, any discrepancies within the affidavits are immaterial to this Court's analysis and to the ultimate resolution of Defendants' joint motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants Logan and STOP's joint motion to dismiss (Doc. 69) is **GRANTED in part**. Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants Logan and STOP are **dismissed without prejudice** from this action on the basis of lack of personal jurisdiction.

**IT IS SO ORDERED.**

DATED: 11/30/09

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge